RuffxN. C. J.
 

 The case, ns found from the pleadings and proofs, is this : The
 
 Uniias Fratrum
 
 of Salem owned extensive tracts of land around that place, of which the title was in the defendant, Shultz, as a trustee for the sale thereof, and it was a rule in the land office, as it was called, that, when the purchase money was not paid, the title was retained as a security for it, and also a bond taken from the purchaser and a surety; and a further rule, when there were no written articles between the vendor and purchaser, if the surety became unwilling to stand longer, and the principal failed to discharge him by payment, or giving a new bond, that the surety should have the right to be substituted as purchaser and take the land himself. In August,. 1822, the plaintiff made a verbal contract with Shultz for a tract of laud containing fifty acres at the price of f28?,50> and, to secure it, he executed his obligation to Shultz, m the sum of $565, with the defendant, Noding. as his surety, conditioned for the payment of $287,50, with interest thereon from the date. The plaintiff immediately look possession, and occupied until 1827, having made several small payments, but not sufficient to extinguish the interest; and he then became embarrassed, and unable to pay for the land; and Noding represented to Shultz the plaintiff’s inability to make payment, and claimed his own right to take it, saying he would sell it and raise the money to pay the bond, and, without consulting the plaintiff, it was agreed between Noding and Shultz, that the former should take the land as purchaser, instead of Lowder, and either sell it and raise the purchase money, or give his bond with a surely therefor. This arrangement was soon after communicated to the plaintiff by Noding, who requested him to sur
 
 *210
 
 render possession to a tenant, to whom Noding let the place for. the year 182S ; but Lowder refused at first, unless some allowance were made him for improvements. Thereupon, Noding applied to Shultz for a written order to Lowder, and on the 3d of November, 1827, Shultz wrote to the plaintiff, that, as he could not pay for the land, it had been concluded between Shultz and Noding, that the latter should take the land at the same price, and therefore that the plaintiff must deliver the possession to Noding, and stating that Noding was to give a new bond, and that he, Shultz, would give up the plaintiff his bond. The
 
 latter was delivered to
 
 Noding, who sent it to Lowder by the man to whom he made the lease for 1828, and upon receipt of it, the plaintiff, in compliance with the direction therein, immediately left the premises, and removed a few miles off, and the lessee entered, and occupied the next year as tenant of Noding, at $12 rent, and in 1829, at #15. In 1828, and several times afterwards, in the two succeeding years, the plaintiff applied at the land office for his bond, or for a release from his liability on it, and was told by Shultz and his clerk and general agent, that it could not be delivered up, nor a release given then, because that would discharge
 
 Noding
 
 as well as the plaintiff, but he was told further, that they considered Noding the purchaser of the land, and had done so from the time he took it on himself, and they looked to him for the payment, and' not to Lowder, and only held the bond until Noding should give a new one, which he had frequently promised to do. Noding continued to exercise various acts of ownership over the premises up to 1839, and in that year he contracted with one Jarvis for the sale of the eastern half, at $125, to be paid to Shultz in part of Nodiug’s debt for the purchase money, and gave him a letter to Shultz, requesting him to receive the money and ere-
 
 *211
 
 dit it on the bond, and upon getting it, to convey that part to Jarvis, which was accordingly done.
 

 The answer of Noding states, that he is illiterate, and that the contract between Jarvis and himself was, that the former was to take the whole tract and clear him altogether, and that Jarvis wrote and'read the order to Shultz falsely ; and in that respect, the answer is supported by a witness who was present, and contradicted by the deposition of Jarvis. In 1845 Shultz endorsed the bond to a new trustee of the
 
 Unitas Fratrum,
 
 and an action was brought on it against both Noding and Lowder, in which the plaintiff was nonsuited. Upon being served with the writ, Lowder called on Shultz and the clerk in the land office, and complained of being sued after having been so repeatedly assured, that he was not looked to for the debt, and he was told immediately by both of them, that the attorney had included him in the writ by mistake, and that it should be corrected. as they had never looked to him for the debt since Noding had taken it upon himself, and it would be unjust that he should pay any part of it. After the nonsuit in the above mentioned action, another was brought in 1.847, in the name of Shultz against Noding, and also Lowder, and in October, 1848, judgment was recovered against both, and, at the suggestion of Noding, the Jury found, that he was the surety, and Lowder the principal, in the bond.
 

 The bill was filed immediatelj against Noding and Shultz, and states, that both of the defendants, as well as the plaintiff, considered the plaintiff’s contract of purchase absolutely rescinded in November, 1828, when he was ordered and went out of possession, and that he has, at no time since, in any manner, set up any claim to the premises, but on the contrary, Noding was in fact the purchaser of the land, and treated it as his own, and the bond, which was originally g' en by the plaintiff and Noding, was kept up as the bond
 
 *212
 
 of Noding alone, ox*, at least, as a security by which he alone, was to be bound in equity. The prayer is, that it may be declared, that the plaintiff's purchase was rescinded, and that thereby the plaintiff was po longer bound to pay the purchase money'he had agreed to pay, but ought to be relieved against the judgment rendered therefor, by an injunction, and for general relief. The answer of Shultz admits the transaction with Noding in 1827, and that he wrote the letter to Lowder, informing him that Noding had purchased the land, and that lie must surrender it to him. And it further admits, that Noding, and not Lowder, was afterwards considered by him as the purchaser, and bound as the principal in the bond, but states, tiiat, not being privy to any arrangement between the other two parties, this defendant, likewise, thought he might look to the plaintiff as bound as surety for Noding. The defendant slates, that he took no part in the contest between the defendants at law, as to their relation of principal and surety,' as he had no concern in it, but his interest and effort were to get judg ment against both; and he submits to procure a conveyance of the legal title to either of the parties, to whom, in the opinion of the Court it ought to be made, upon the payment of the purchase money and interest. The answer of Noding denies explicitly, that ho carried any such letter as that mentioned, from Shultz to Lowder, or sent it to him, or that Lowder’s purchase was ever rescinded, to his knowledge, or that he agreed to become the purchaser of the land, or to give a new bond for the purchase money, or otherwise to discharge Lowder, or to stand in his place in the payment of the purchase money; and it states that he considered that Lowder, being insolvent, had first abandoned the premises to the vendor, and his surety to do the best they could with them, and that all his subsequent acts were merely efforts to save hitnself as surety, from loss, and not acts.
 
 *213
 
 of ownership in his own right. It finally insists on the finding ot the Jury in the suit at law, that he was the plaintiff’s surety for the debt. But, notwithstanding those denials, the facts before staled are established clearly by the proofs ; and, further, that, at the time oí Noding’s sale to Jarvis, in 1839, the plaintiff had acquired property sufficient to pay the debt, and has been in good circumstances ever since, and living in the same county with the other parlies; and yet, there is no evidence that, from 1827 to 1845, there was any communication whatever between Noding and Lowder in résped to the land or debt; or that Noding ever requested Shultz to apply to Lowder for payment ; but, on the contrary, it appears, that he was often urged by Shultz or his clerk for payment of the bond, and as often promised to sell the land, and then to pay up whatever the land might fail to discharge.
 

 An injunction was granted on the bill, but it was dissolved on the answers, and on the 13th. of April, 1849, the plaintiff paid Shultz $503 76 for the principal and interest then due on the judgments. The plaintiff took replication to the answers, and the parties proceeded to proofs, and the canse was transferred for hearing in this Court.
 

 The fact seems to be beyond doubt, that Shultz, at the instance of Noding, ordered the plaintiff off the land and rescinded his purchase, and then made a new sale to No-ding. It is not material, whether the plaintiff willingly as. seated to those arrangements, or not; for, the contract on the part of the vendor was oral, and created no obligation which could be enforced. When, therefore, Shultz wrote to Lowder, that he would not convey to him, but had sold to another, and ordered him to give up the possession, Low-der had no option, but was under a necessity to comply: and he did so. In that state of things, the plaintiff was ea-titled, in tho view of a Court .of Equity, to be discharged
 
 *214
 
 from the payment of the purchase money he had promised,' and, consequently, to have his bond surrendered, which he ' had given to secure it, as the consideration for it had thus-failed. For, although the failure ofthe consideration of a bond is not a discharge-of it at law, and cannot be enquired into there, yet it is otherwise in equit}', because, here, the debt is considered to arise out of the original contract of purchase, and the bond to be only a security for it. There-' fo're, when the .party is equitably discharged from the debt, the security fails in' equity, however it may be at law.— There can be little question, that the bond would have bé'én given up, on the spot, had it not happened that the second sale was to one of the obligors in that bond, Who was tog-ive a new one, with a surety, for the purchase money, and agreed that, until he did so, the vendor might retain the - old'bon’d as his security. Those parties might, probably, malte such an arrangement, as’ be! ween themselves. But ttifey had, in the view of this Court, no right to deal in that' way with the paper, as the bond of Lowder, without his concurrence. For, being equitably discharged from the obligation, it required an explicit agreement bn his part 16 sét it up for the purpose of binding him-as the surety- of Noding. The intention and expectation of Shultz on that point could not affect Lowder’s rights.' But there'was no-such expectation or intimation at-the beginning, nor for many years afterwards : for, he’and'Noding looked -on the latter as the purchaser, and the hond as binding him exclusively, and both Shultz, • and his élerk -ahd’general agent, assured 'the -plaintiff all 'along! that if should never come agtcfnst hiibi 'and, even after' he was'-sue3, that it was-by’ mistákV, and shoal'd never hurt him. The plaintiff is, -there-fore, fehfitled' to be put into the same situation/as :hé- would' ha voltéen, if’the'bond -had been actually delivered up.--'
 

 The question remains as to the particular manner, and
 
 *215
 
 against whom ho is so entitled. First, he ought to get back the sum he paid on the judgment for the debt, interest, and costs at law, with interest thereon from the days of payment. Next, both of the defendants are liable to him there-fojY but Noding in the first instance, if he be of ability, and Shultz will cause the remaining half of the premises to be duly eonveyed to him. Noding is primarily liable, because, as already- said, he agreed that this bond should stand as a security for his purchase money ; and, therefore, he was bound to pay it in exoneration of the plaintiff. In opposition-to that, reliance is placed on the finding of the jury, that he was the surety. This is not the occasion-for put-, ting a construction on the act of 1820, ch. 31, which would certainly-require serious consideration before holding, that,, instead of providing merely a guidance to the sheriff in proceeding on the execution, it was intended to conclude the rights of the parties on this point, which often -involves nice .equities, by the finding of -a jury on a matter, on which no issue even is joined, but merely a collateral sug-, ges-tiqn made by one of the defendants against the other-. But supposing that, ordinarily,, the finding, amounts toa decision'.of ;the right, as-between the defendants at law, it cannot in.
 
 this
 
 Court affect the question between -these parties. . .For, here the plaintiff’s case is very different in its nature from what it was at law, and depends on different principles.. In the action at law, the failure of consideration constituted no defence, and, therefore, the debt demanded was legally the debt of both parties, and the plaintiff a.t-lraw was _ obliged to recover against both. If Lewder was liable at all on the bond, it was, certainly, as principal ; for he executed it in that character, and never agreed that it should operate to any other purpose. As far, then, as both of the obligors are bound to the creditor, who is to have his debt at all events, and the only question
 
 *216
 
 is', which is principal and which is surety, and that qu'estion depends on the same matter of fact and of law, both in the Court of Law and the Court of Equity, it may well be, that the finding should be conclusive, and that the point cannot be drawn into question a second time in Equity, But that, manifestly cannot apply, when, though hound at law,-one of the parties has an equitable discharge from the debt; so that in the Court of Equity he is bound neither as principal nor surety ; which is the case before the Court. The equity on which such a discharge arises, cannot be taken notice of by the jury, even if some may, because, by giving effect to it between the defendants and the plaintiff, they both were legally indebted to him, but, as between the defendants themselves, one of them was not indebted to the plaintiff The jury could not pass on this equity between the defendants without finding inconsistently with their verdict for the plaintiff; and for that reason, at all events, the case is not within the statute.
 

 . There is no reason, therefore, why, upon Shultz having a proper title made to him, Noding should not be decreed to reimburse to the plaintiff the sums before mentioned, to be ascertained by an enquiry. If, indeed, Shultz will not have the remaining half of the land conveyed to Noding, or if Noding should be unable to pay those sums, th,e plaintiff may then take his recourse on Shultz. The defendants must pay to the plaintiff the sums he paid as costs on the , dissolution of the injunction, and they must also pay all the costs of this suit up to the hearing.
 

 Pea Quztam. Decree accordingly.